UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                           :
IN RE APPLICATION OF HANWEI GUO               :        18-MC-561 (JMF)
FOR AN ORDER TO TAKE DISCOVERY                :
FOR USE IN A FOREIGN PROCEEDING               :        MEMORANDUM OPINION
PURSUANT TO 28 U.S.C. § 1782                  :             AND ORDER
                                                           :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

Petitioner Hanwei Guo ("Guo") applies, pursuant to 28 U.S.C. § 1782(a), for an order permitting him to take discovery from Respondents Deutsche Bank Securities Inc., J.P. Morgan Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, and Morgan Stanley & Co. LLC ("Respondents") for use in an arbitration pending before the China International Economic and Trade Arbitration Commission ("CIETAC"). Section 1782(a) provides that "[t]he district court of the district in which a person resides or is found may order him . . . to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . upon the application of any interested person . . . ." 28 U.S.C. § 1782(a). To obtain discovery pursuant to the statute, a petitioner must therefore meet three threshold requirements: "(1) the person from whom discovery is sought must reside or be found in the district in which the application was made, (2) the discovery must be for use in a foreign proceeding before a foreign [or international] tribunal, and (3) the applicant must be either a foreign tribunal or an interested person." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 128 (2d Cir. 2017) (internal quotation marks omitted). The question in this case is whether CIETAC, which was originally established by the Chinese government but now operates as a largely private commercial arbitration body, qualifies as a "foreign or international tribunal" within the meaning of Section 1782(a).

Significantly, the Court does not write on a blank slate. In *National Broadcasting Co. v. Bear Stearns & Co.*, 165 F.3d 184 (2d Cir. 1999) ("*NBC*"), the Second Circuit held that the term "foreign or international tribunal" was ambiguous. But looking to the statute's legislative history, the Circuit concluded that a "private commercial arbitration administered by the International Chamber of Commerce ('ICC'), a private organization based in Paris, France," was not a "proceeding in a foreign or international tribunal" within the meaning of Section 1782(a). 165 F.3d at 186. The legislative history, the Circuit explained, "reveals that when Congress . . . enacted . . . § 1782, it intended to cover governmental or intergovernmental arbitral tribunals and conventional courts and other state-sponsored adjudicatory bodies," but did not intend to cover "arbitral bod[ies] established by private parties." *Id.* at 190-91; *see id.* at 189 (noting that while the proponents of the current version of Section 1782(a) intended for the term "tribunal" to extend beyond "conventional courts," they "had in mind only governmental entities, such as administrative or investigative courts, acting as state instrumentalities or with the authority of the state"). On top of that, the Circuit noted, "[o]pening the door" to discovery under Section 1782(a) for use in a private arbitration "would undermine one of the significant advantages of arbitration" — namely, "its asserted efficiency and cost-effectiveness" — "and thus arguably conflict with the strong federal policy favoring arbitration." *Id.* at 190-91.

Applying *NBC* here, the Court concludes that CIETAC does not qualify as a "foreign or international tribunal" within the meaning of Section 1782(a). The Court reaches that conclusion for several reasons. First, CIETAC's jurisdiction is derived exclusively from the private agreement of the parties to the arbitration proceedings. *See* Docket No. 37 ("Wang Decl."), ¶ 13; CIETAC Arbitration Rules ("CIETAC Rules") art. 3(1). Second, subject to approval by CIETAC, the parties — not the state — are permitted to choose their own arbitrator or arbitrators. Wang Decl. ¶ 14. To that end, CIETAC maintains a list of over 1,400 approved

arbitrators, but the parties are not limited to choosing from the list and, in any event, the list includes over 400 arbitrators from outside of China. *Id.* ¶ 15. Third, within broad limits, the arbitrators' decision "is final and binding upon both parties." CIETAC Rules arts. 49-50; Wang Decl. ¶ 18. Fourth, CIETAC emphasizes its "[i]ndependence and impartiality," noting that it is "independent of the administrative organs [of the Chinese government], and free from any administrative interference in handling cases." Docket No. 34-3, at 3. And finally, CIETAC advertises its efficiency and cost-effectiveness, noting that "most CIETAC arbitrations can be concluded within six months," *id.* — advantages that, as the *NBC* Court noted, would be undermined if parties to a proceeding could conduct discovery in the United States pursuant to Section 1782(a).

Admittedly, CIETAC presents a closer case for coverage under the statute than the ICC did in *NBC*. For one thing, it (or, more precisely, its precursor) was originally established by an entity of the Chinese government in 1954. Docket No. 34-3, at 2. But Guo seeks discovery for use in a CIETAC proceeding *today*, not in 1954 — and, like China itself, CIETAC has evolved dramatically since 1954 and today bears little resemblance to its precursor. *See, e.g.*, Arthur Ma, et al., *People's Republic of China*, *in* ASIA ARBITRATION HANDBOOK § 3.63, at 124 (Michael J. Moser & John Choong eds., 2011) ("Although established under the auspices of a quasi-governmental entity, CIETAC's legal status has gradually transformed into a non-governmental organization which now functions independently in dispute handling."). Thus, *NBC*'s reference to arbitral bodies "*established* by private parties" notwithstanding, 165 F.3d at 191 (emphasis added), the Court concludes that CIETAC's origins are not dispositive.[1] It is also true, as Guo

---

[1] Substantively, there is nothing in the *NBC* Court's opinion suggesting that whether "an arbitral body" is one "established by private parties" turns on the historical or legal origins of the relevant arbitration commission, association, or other organization. 165 F.3d at 191. As the Court emphasized, "arbitration is a creature of contract." *Id.* at 186. Thus, "established by

3

notes, that the Chinese government retains some degree of authority, in theory if not practice, over CIETAC; and that CIETAC awards are subject to limited review, and enforcement, in Chinese courts under Chinese law. *See* Docket No. 43 ("Guo Reply"), at 3-7; Docket No. 44, ¶¶ 13-15. But the Court doubts that the *NBC* Court's reference to proceedings before "state-sponsored adjudicatory bodies," 165 F.3d at 190, was meant to include arbitrations created by private agreement that are carried out with that minimal degree of state involvement. After all, even the most "private" of arbitrations are commonly backed up by the prospect of review, and enforcement, in governmental courts. *See, e.g.*, 9 U.S.C. §§ 2, 9; Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517 (codified at 9 U.S.C. §§ 201-08); Inter-American Convention on International Commercial Arbitration, Jan. 30, 1975, O.A.S.T.S. No. 42, 1438 U.N.T.S. 245 (codified at 9 U.S.C. §§ 301-07). On balance, therefore, the Court concludes that CIETAC is closer to a private arbitral body than it is to a "governmental . . . tribunal[]" or "other state-sponsored adjudicatory bod[y]" and, thus, that Guo's petition is foreclosed by the Second Circuit's decision in *NBC*. 165 F.3d at 190.

Nor is the Court persuaded by Guo's fallback argument that *NBC* is no longer good law after the Supreme Court's decision in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). *See* Guo Reply 7-8. To be sure, in dictum, the *Intel* Court did cite a secondary source defining "tribunal" to include "'investigating magistrates, administrative and *arbitral tribunals*, and quasi-judicial agencies.'" 542 U.S. at 258 (emphasis added) (quoting Hans Smit, *International Litigation under the United States Code*, 65 Colum. L. Rev. 1015, 1026 n.71 (1965)). And relying on that dictum, some district courts in this Circuit have declined to follow

---

private parties" could just as easily refer to the origins of the arbitral body's authority in the proceedings at issue. In that sense, the CIETAC proceedings were "established by" the parties to the contract calling for arbitration under the auspices of CIETAC.

*NBC*. *See, e.g.*, *In re Children's Inv. Fund Found. (UK)*, No. 18-MC-104 (VSB), 2019 WL 400626, at *5 (S.D.N.Y. Jan. 30, 2019); *In re Kleimar N.V.*, 220 F. Supp. 3d 517, 521-22 (S.D.N.Y. 2016). A district court, however, must follow Second Circuit precedent "unless and until it is overruled in a precedential opinion by the Second Circuit itself or unless a subsequent decision of the Supreme Court so undermines it that it will almost inevitably be overruled by the Second Circuit." *United States v. Diaz*, 122 F. Supp. 3d 165, 179 (S.D.N.Y. 2015) (internal quotation marks omitted); *see also Monsanto v. United States*, 348 F.3d 345, 351 (2d Cir. 2003) (noting that district courts and the Second Circuit itself are "required to follow" a Second Circuit decision, even if it is in "tension" with subsequent Supreme Court precedent, "unless and until that case is reconsidered by [the Second Circuit] sitting in banc (or its equivalent) or is rejected by a later Supreme Court decision"). And separate and apart from the fact that *Intel*'s dictum is not even binding, there is no basis to conclude that the Supreme Court's decision "so undermines" *NBC*'s reasoning as to render its overruling "almost inevitabl[e]." *Compare Republic of Kazakhstan v. Biedermann Int'l*, 168 F.3d 880, 881-83 (5th Cir. 1999) (following *NBC*), *with El Paso Corp. v. La Comision Ejecutiva Hidroelectrica Del Rio Lempa*, 341 Fed. App'x 31, 33-34 (5th Cir. Aug. 6, 2009) (rejecting the argument that *Biedermann* was "no longer controlling in light of" *Intel* because *Intel* did not "unequivocally" call for its overruling).

In short, the Court concludes that the CIETAC arbitration at issue here is not "a proceeding in a foreign or international tribunal" within the meaning of Section 1782(a). It follows that Guo's petition must be and is DENIED.

The Clerk of Court is directed to terminate Docket No. 1 and to close the case.

SO ORDERED.

Dated: February 25, 2019
New York, New York

_____
JESSE M. FURMAN
United States District Judge